| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| GUILFORD COUNTY | SUPERIOR COURT DIVISION |
| | 19 CVS 7907 |

FILED 2019 AUG 15 P 12: 46

Anita Stone, Wendy Baker, Andre Easter, Tori Riddle, Mamie Smith, Marquita Taylor, Cortillia Holmes and Tijuana Lesene,

    Plaintiffs,

v.

AUTOMONEY, INC. and AUTOMONEY NORTH, LLC,

    Defendants.

**COMPLAINT**

NOW COME Plaintiffs complaining of Defendants AUTOMONEY, INC. and AUTOMONEY NORTH, LLC and allege and say:

## PARTIES & JURISDICTION

1. Plaintiffs are citizens and residents of the state of North Carolina.

2. Defendants, upon information and belief, are a foreign corporation and a foreign limited liability company organized and existing under the laws of the state of South Carolina. At all times relevant to the events and transactions alleged herein, Defendants unlawfully engaged in the automobile title loan business in North Carolina.

3. This Court has jurisdiction over Defendants pursuant to N.C.G.S. §1-75.4 in that at all times relevant to the events and transactions alleged herein, Defendants, via the internet, cellular telephone and other media and communication methods solicited, marketed, advertised, offered, accepted, discussed, negotiated, facilitated, collected on, threatened enforcement of and/or foreclosed upon automobile title loans with Plaintiffs and other North Carolina citizens in violation of the North Carolina Consumer Finance Act, N.C.G.S.

§53-164, et seq. For a considerable amount of time prior to the events and transactions with Plaintiffs as alleged herein, Defendants had regular, ongoing, continuous and systematic contacts with the state of North Carolina and its citizens and had conducted business in this state in that Defendants via the Internet, cellular telephone and other media and communication methods solicited, marketed, advertised, offered, accepted, discussed, negotiated, facilitated, collected on, threatened enforcement of and foreclosed upon automobile title loans with North Carolina citizens in violation of the North Carolina Consumer Finance Act, N.C.G.S. §53-164, et seq., such that this Court has personal jurisdiction over Defendants pursuant to N.C.G.S. §1-75.4. Further, pursuant to N.C.G.S. §1-75.8, this Court has jurisdiction over Defendants because the collateral motor vehicles securing the loans alleged and described herein were and are physically located in North Carolina.

4. Defendants, at all times relevant hereto, were and remain in the business of making consumer car title loans.

5. Defendants have knowingly and intentionally constructed and engineered their internet advertising to ensure that Defendants' South Carolina office locations appear as internet search results when a North Carolina consumer conducts an internet search for a "car title loan" or terms similar thereto.

6. Defendants have purposefully established their business locations just across the North Carolina- South Carolina state line to avoid the application of North Carolina law to loan contracts Defendants enter into with North Carolina residents, such as Plaintiffs.

7. Upon information and belief, at all times relevant hereto, Defendants have regularly solicited customers in North Carolina.

8. Upon information and belief, at all times relevant hereto, Defendants regularly enter into North Carolina to take possession of motor vehicles.

9. Upon information and belief, at all times relevant hereto, Defendants have registered with the North Carolina DMV in order to place liens upon North Carolina motor vehicle titles and do, in fact, regularly place liens on North Carolina motor vehicle titles.

10. With regard to each Plaintiff, Defendants engaged in one, some or all of the following activities:

   a. They solicited Plaintiffs for their unlawful loan products at a time when Plaintiffs were physically in the state of North Carolina.

   b. They discussed their unlawful loan products at a time when Plaintiffs were physically in the state of North Carolina.

   c. They negotiated their unlawful loan products at a time when Plaintiffs were physically in the state of North Carolina.

   d. They advertised their unlawful loan products at a time when Plaintiffs were physically in the state of North Carolina.

   e. They offered their unlawful loan products at a time when Plaintiffs were physically in the state of North Carolina.

   f. They received acceptances for their offers of their unlawful loan products at a time when Plaintiffs were physically in the state of North Carolina.

   g. They entered into one or more unlawful title loan agreements with each Plaintiff.

   h. They received payments for their unlawful loan products from the state of North Carolina.

      i.      Using the North Carolina DMV, they placed liens on North Carolina motor vehicle titles to secure their unlawful loan products.

      j.      They physically entered the state of North Carolina to take possession of and sell North Carolina titled collateral motor vehicles.

11.    Each Plaintiff went to one of Defendants' South Carolina offices where he or she met Defendants' representatives who presented him or her with the loan documents necessary to finalize a loan, obtained each Plaintiff's signature on the loan documents and exchanged Defendants' loan check for each Plaintiff's North Carolina car title.

12.    At all times relevant hereto, Defendants knew or should have known that each Plaintiff was a North Carolina resident and held a North Carolina title on their vehicle.

13.    Defendants loaned each Plaintiff a sum of money at an annual interest rate that far exceeds the lawful rate of interest in North Carolina and in excess of 100% per annum.

14.    Defendants intentionally and regularly accept loan payments from North Carolina consumers while those consumers are physically in the state of North Carolina by mail, telephone debit card payments, online payments and by Western Union.

15.    Defendants regularly and intentionally, and in connection with car title loans of the type and kind alleged herein, solicit, discuss, negotiate, offer, receive acceptances to loan offers and deliver and accept funds, with North Carolina consumers at a time when those consumers are physically in the state of North Carolina. Defendants regularly and intentionally take actions and measures to enforce those loans in North Carolina, including repossession and sales of collateral automobiles owned by North Carolina consumers.

16. At all times relevant hereto, each Plaintiff's vehicle was registered in the state of North Carolina and bore a North Carolina license plate, all of which was known to Defendants at the time of the transactions alleged herein.

17. The Uniform Commercial Code ("UCC") as adopted in both South Carolina and North Carolina provides that North Carolina law governs these title loan transactions.

18. The UCC provides that where the secured good is covered by a certificate of title, as is the case with each Plaintiff's motor vehicle, the local law of the jurisdiction that issued the title governs.

19. N.C. Gen. Stat. § 25-9-303(c) provides:

> (c) Applicable law. – The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.

20. The South Carolina Code contains an identical provision at Section 36-9-303(c):

> (c) The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.

21. Article 9 of the UCC as adopted in both North Carolina and South Carolina both provide that consumer protection statutes and rules apply to covered transaction transactions.

22. South Carolina Code Section 36-9-201 states: "[a] transaction subject to this article is subject to any applicable rule of law which establishes a different rule for consumers and (i) Title 37 and (ii) any consumer-protection statute or regulation."

23. The North Carolina version of the UCC is even more specific, providing that the NC Consumer Finance Act and Usury laws apply to covered consumer transactions:

Applicable consumer laws and other law. – A transaction subject to this Article is subject to any applicable rule of law which establishes a different rule for consumers, to any other statute, rule, or regulation of this State that regulates the rates, charges, agreements, and practices for loans, credit sales, or other extensions of credit, and to any consumer-protection statute, rule, or regulation of this State, including Chapter 24 of the General Statutes, the Retail Installment Sales Act (Chapter 25A of the General Statutes), the North Carolina Consumer Finance Act (Article 15 of Chapter 53 of the General Statutes), and the Pawnbrokers and Cash Converters Modernization Act (Part 1 of Article 45 of Chapter 66 of the General Statutes).

## FIRST CAUSE OF ACTION
(Violations of the North Carolina Consumer Finance Act, N.C.G.S. §53-165, et seq.)

24. Plaintiffs reallege the allegations contained in Paragraphs 1-23 above.

25. The annual interest rates Defendants have charged each Plaintiff far exceed the maximum annual rate of interest allowed by the North Carolina Consumer Finance Act, N.C.G.S. §53-176, on a consumer loan in the amounts loaned by Defendants. N.C.G.S. §53-190 makes unenforceable any loan contracts made outside of the state of North Carolina in the amount of fifteen thousand dollars ($15,000.00) or less for which greater consideration or charges than those authorized by N.C.G.S. §53-173 and N.C.G.S. §53-176 have been charged, contracted for or received unless all of the contractual activities,

including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside the state of North Carolina.

26. The acts of Defendants in charging each Plaintiff excessive and unlawful annual interest rates are clear violations of the North Carolina Consumer Finance Act that subject Defendants to penalties under N.C.G.S. §53-166(d), including without limitation, that Defendants shall not collect, receive, or retain any principal or charges whatsoever with respect to the loans.

27. Each Plaintiff has been damaged by Defendants' violations of the North Carolina Consumer Finance Act alleged herein in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
(Violations of N.C.G.S. §75-1.1)

28. Plaintiffs reallege the allegations contained in Paragraphs 1-27 above.

29. The acts and conduct of Defendants alleged herein constitute acts and conduct in and affecting commerce and Defendants' intentional, knowing, and purposeful violations of the North Carolina Consumer Finance Act, including without limitation Defendants' failure to disclose that the loans were unlawful, constitute unfair and deceptive trade practices within the meaning of both N.C.G.S. § 53-180(g) and N.C.G.S. § 75-1.1 that are substantially injurious to consumers, including Plaintiffs.

30. Each Plaintiff has been damaged by Defendants' violations of the North Carolina Consumer Finance Act an amount to be proven at trial.

31. The acts and conduct of Defendants alleged herein are part of a pattern and practice of Defendants purposefully violating North Carolina interest laws and the North Carolina Consumer Finance Act.

32. Each Plaintiff is entitled to an award of treble damages pursuant to N.C.G.S. § 75-1.1.

33. Each Plaintiff is entitled to recover his or her reasonable attorneys fees pursuant to N.C.G.S. § 75-16.

### ALTERNATE THIRD CAUSE OF ACTION
(Violation of N.C.G.S. § 24-1.1., et seq. – Usury)

34. Plaintiffs reallege the allegations contained in Paragraphs 1-33 above.

35. The annual interest rate Defendants have charged each Plaintiff far exceeds the maximum annual rate of interest allowed by the North Carolina Consumer Finance Act, N.C.G.S. § 24-1.1, on a consumer loan in the amount loaned by Defendants.

36. The loans alleged herein are additionally governed by Chapter 24 of the North Carolina General Statutes pursuant to N.C. Gen. Stat. § 24-2.1. Among other reasons, As to one, some or all Plaintiffs, Defendants engaged in solicitations and made oral offers to lend that were received in North Carolina, As to one, some or all Plaintiffs, Defendants received solicitations or communications from Plaintiffs that originated within North Carolina for Plaintiffs to borrow.

37. N.C. Gen. Stat. § 24-2.1 (g) provides: "It is the paramount public policy of North Carolina to protect North Carolina resident borrowers through the application of North Carolina interest laws. Any provision of this section which acts to interfere in the attainment of that public policy shall be of no effect."

38. The acts and conducts of Defendants, as to one, some or all Plaintiffs, in soliciting them for the loans alleged herein, discussing and negotiating such loans, offering to make Plaintiffs such loans and receiving each Plaintiff's acceptance to its loan offer, all at a time

while Plaintiffs were physically in the state of North Carolina, and then charging them an annual interest rate of more than 100% on those loans are clear violations that subject Defendants to penalties under N.C.G.S. §24-1.1, et seq.

39. In alternative to the penalties set forth in Chapter 53 and Chapter 75, Defendants are subject to the penalties set forth in N.C.G.S. §24-2, including without limitation, repayment of twice the amount of interest paid on the unlawful loan, forgiveness of purported debts, and return of the title unencumbered titles to Plaintiffs' motor vehicles.

40. Plaintiffs have been damaged by Defendants' violations of the North Carolina General Statutes Chapter 24 as alleged herein in an amount to be proven at trial.

## ALTERNATE FOURTH CAUSE OF ACTION
(Breach of Contract)

41. Plaintiffs reallege the allegations contained in Paragraphs 1-40 above.

42. Prior to the filing of this civil action Plaintiffs and Defendants engaged in settlement negotiations that culminated in Defendants making individual settlement offers to each Plaintiff.

43. In reliance upon, and as consideration for, Defendants' individual settlement offers, each Plaintiff refrained from initiating a civil action against Defendants and each Plaintiff accepted Defendants' settlement offer.

44. After Defendants received each Plaintiff's acceptance of their settlement offer, Defendants refused to make payment of the agreed upon settlement amount to each Plaintiff and, therefore, Defendants have breached their contract to settle with each Plaintiff.

45. Each Plaintiff has been damaged by Defendants' breach of contract in an amount to be proven at trial.

## STATEMENT OF AMOUNT IN CONTROVERSY

Each Plaintiff alleges as to their individual claim that the matter in controversy does not exceed the sum or value of $75,000.00, exclusive of interest and costs,

## MOTION TO CONSOLIDATE

Plaintiffs move the Court, pursuant to Rule 42, Rules of Civil Procedure, for an Order of the Court consolidating this civil action with that pending Guilford County civil action captioned *Alesia Cannon, et al. v. AutoMoney, Inc. and AutoMoney North*, LLC, 19 CVS 7693. In support of this motion, Plaintiffs show unto the Court that this civil action and 19 CVS 7693 present and involve common questions of law and fact and consolidation of the actions will avoid unnecessary costs and delay.

WHEREFORE, Plaintiffs respectfully pray the Court for the following relief:

1. That the Court declare the loans identified herein and the security interests thereon to be void and unenforceable;

2. That each Plaintiff shall have and recover of Defendants all statutory damages incurred and recoverable pursuant to N.C.G.S. § 53-166(d) and other damages as provided by law;

3. That each Plaintiff have and recover of Defendant treble damages pursuant to N.C.G.S. § 75-1.1;

4. Alternatively, that each Plaintiff have and recover of Defendants all statutory damages incurred and recoverable pursuant to N.C.G.S. Chapter 24 and other damages as provided by law;

5. That each Plaintiff have and recover of Defendant interest and attorneys fees as by law provided;

6. Alternatively, that each Plaintiff shall have and recover of Defendants damages for Defendants' breaches of contract in an amount to be proven at trial;

7. That the Court enter its order restraining and enjoining Defendant from further violations of the North Carolina Consumer Finance Act, N.C.G.S. § 53-164, et seq. with regard to each Plaintiff's loan(s) and motor vehicle;

8. That the Court enter its Order consolidating this civil action with Guilford County civil action *Alesia Cannon, et al. v. AutoMoney, Inc. and AutoMoney North*, LLC, 19 CVS 7693; and

9. Such other and further relief the Court deems just and proper.

_____
James R. Faucher
*Attorney for Plaintiff*

_____
Jeffrey K. Peraldo
*Attorney for Plaintiff*

FOR THE FIRM:

**Brown, Faucher, Peraldo & Benson, PLLC**
822 N. Elm St., Suite 200
Greensboro, North Carolina 27401
Telephone: (336) 478-6000
Facsimile: (336) 273-5597
james@greensborolawcenter.com
jeff@greensborolawcenter.com